IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID ANDERSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-890 |
| ETHERWAN SYSTEMS, INC., | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant EtherWAN Systems, Inc.'s ("EtherWAN") Motion to Dismiss (ECF No. 8). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

### I. BACKGROUND[1]

Plaintiff David Anderson worked for EtherWAN as a sales associate for over three years. (Compl. at 1, ECF No. 1). He was hired in September 2018, and in addition to his annual salary, EtherWAN agreed to pay Anderson a bonus based on the revenue he generated for EtherWAN (the "Bonus Plan"). (Id. ¶ 7). The Bonus Plan provided that an employee must be employed at the time of the bonus distribution to receive the bonus payment. (Id. ¶ 8).

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Anderson claims that near the end of 2021, he was entitled to receive his biggest bonus yet during his tenure with EtherWAN, around $40,000. (Id. at 1, ¶ 9). The 2021 bonuses were scheduled to be paid on February 18, 2022, (id. ¶ 10), but Anderson claims that EtherWAN precipitously terminated Anderson beforehand to avoid paying him, (id. ¶¶ 11–12). EtherWAN, on the other hand, claims that Anderson was terminated for violating its IT policy (the "IT Policy") that prohibited forwarding work-related emails to one's personal email address. (Id. ¶ 12). Anderson requested a copy of the email, but EtherWAN refused to provide "support" for its decision to terminate him. (Id. ¶ 13). Further, EtherWAN refused to pay Anderson the bonus he earned in 2021 because he was fired before the distribution of bonuses. (Id. ¶ 14).

Anderson claims that EtherWAN's Director of Sales, his supervisor, "insisted that he execute numerous documents . . . that included material misstatements, some of which were to be utilized to bid government contracts." (Id. ¶ 23). Anderson refused to sign, though, and claims that is the true reason for his termination. (Id. ¶ 24). Anderson states that his termination was in violation of a public policy in Maryland "against asserting material misstatements and in ensuring that employees received all wages earned in a timely manner." (Id. ¶ 27).

On April 12, 2022, Anderson filed his Complaint (ECF No. 1). In his Complaint, Anderson alleges violation of the Maryland Wage Payment and Collection Law ("MWPCL") (Count I) and wrongful discharge (Count II). (Id. at 2–5). Anderson seeks compensatory damages, liquidated damages, treble damages, punitive damages, attorneys' fees and costs, and pre- and post-judgment interest. (Id. at 4–5).

On June 24, 2022, EtherWAN filed a Motion to Dismiss (ECF Nos. 7–8). Anderson filed an Opposition on July 22, 2022, (ECF No. 12), and EtherWAN filed a Reply on August 8, 2022, (ECF No. 17).

## II.   DISCUSSION

### A.   Standards of Review

#### 1.   Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

2. **Extrinsic Evidence**

Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-

pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

**B.     Analysis**

    **1.     Violation of the MWPCL**

Anderson alleges a claim for a violation of the MWPCL for non-payment of his $40,000 year-end bonus tied to his sales. (Count I). "[T]he MWPCL represents a strong public policy of Maryland," and "seeks to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" Blanch v. Chubb & Sons, Inc., 124 F.Supp.3d 622, 630, 634 (D.Md. 2015). The MWPCL "requires employers, upon the termination of an employee's employment, to pay that employee 'all wages due for work that the employee performed before the date of termination of employment.'" Provident Bank of Md. v. McCarthy, 383 F.Supp.2d 858, 860 (D.Md. 2005) (quoting Md. Code Ann., Lab. & Empl. ("LE") § 3-505). "Wage includes a bonus, commission, fringe benefit or any other remuneration promised for service." Id. (citing Whiting-Turner Contracting Co. v. Fitzpatrick, 783 A.2d 667 (Md. 2001)); LE § 3-501(c). The Maryland Court of Appeals has developed a bright-line test for what constitutes wages, which "provides that only when wages have been promised as part of the compensation for the employment arrangement and all conditions agreed to in advance for earning those wages have been satisfied" is the employee entitled to payment. Blanch, 124 F.Supp.3d at 635 (quoting Catalyst Health Sols. v. Magill, 995 A.2d 960, 969 (Md. 2010)). "[W]hat is due an employee who terminates employment with an employer are wages for work performed before termination, or all compensation due to the employee as a result of employment including any remuneration,

5

other than salary, that is promised in exchange for the employee's work." Whiting-Turner, 783 A.2d at 671. "Contractual language between the parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts." Blanch, 124 F.Supp.3d at 630 (quoting Medex v. McCabe, 811 A.2d 297, 304 (Md. 2002)).

EtherWAN argues that Anderson's claim fails because he did not satisfy all conditions precedent to the Bonus Plan before it was due. (Mem. L. Supp. Mot. Dismiss ["Mot."] at 7, ECF No. 8). Specifically, EtherWAN argues that the Bonus Plan includes language stating that an employee must "be employed by EtherWAN System Inc. at the time of bonus distribution to receive [the] bonus payment(s)." (Id. at 8; 2021 Bonus Plan at 12, ECF No. 8-1).[2] EtherWAN contends that Anderson was terminated before the distribution date for the year-end bonus and thus he was ineligible to receive it under the terms of the Bonus Plan. (Mot. at 8). Anderson responds that he met all relevant conditions, meaning those he needed to complete to earn his bonus, but claims that the condition that

---

[2] Rather than filing the exhibits to their Motion as separate attachments, EtherWAN combined its exhibits as one filing. Thus, the electronic document accessible at ECF No. 8-1 contains several exhibits. The Bonus Plan may be found at p. 2 of ECF No. 8-1. Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Further, the Court notes that Anderson objects to EtherWAN's inclusion of the Bonus Plan because it is outside the scope of his Complaint. (Opp'n at 2). Although Anderson did not attach the Bonus Plan to his Complaint, the Court may consider it because it was referred to and relied upon in the Complaint. See Fare Deals Ltd., 180 F.Supp.2d at 683; (Compl. ¶ 8 ("In addition to paying Plaintiff his annual salary, Defendant agreed to pay Plaintiff a bonus based upon the revenue he generated for Defendant (the "Bonus Plan"))). The Court does not need to refer to any of EtherWAN's other exhibits to resolve the Motion before it. (See ECF No. 8-1 at pp. 6–18).

he remain employed to receive certain wages is void against public policy under Medex v. McCabe, 811 A.2d 297 (Md. 2002). (Resp. Mot. Dismiss ["Opp'n"] at 5, ECF No. 12-1). At bottom, the Court finds that Anderson has stated a claim for violation of the MWPCL.

EtherWAN argues that Anderson is not entitled to his year-end bonus as a matter of law under Blanch v. Chubb & Sons, Inc., 124 F.Supp.3d 622, 635 (D.Md. 2015), and Whiting-Turner Contracting Co. v. Fitzpatrick, 783 A.2d 667 (Md. 2001). (Mot. at 7–8). The Court disagrees that Blanch or Whiting-Turner require it to dismiss Anderson's claim.

In Blanch, this Court reviewed on reconsideration its grant of summary judgment in favor of the employer over plaintiff's claims for an unpaid performance bonus and profit sharing under the MWPCL following his termination. 124 F.Supp.3d at 626, 628. The employer argued that profit-sharing payments do not qualify as wages because they were based in part on criteria independent of the employee's performance, namely, "business unit . . . performance," and thus were not wages under the MWPCL. Id. at 635–36. The Court explicitly declined to accept the employer's argument and found that profit-sharing can qualify as wages, clarifying that payments "which are merely offered as a gratuity, revocable at any time before delivery, and not promised for service, do not qualify as wages under the Wage Law." Id. at 636 (quoting Aronson & Co. v. Getridge, 957 A.2d 125, 137–38 (Md.Ct.Spec.App. 2008)).

In Whiting-Turner, the employee had agreed to be compensated through a "weekly salary and, after two years of employment and depending upon the profitability of the company, profit sharing." 783 A.2d at 669. The employee left before hitting the two-year benchmark and his employer initially withheld his bonus check. Id. The District Court for

7

Baltimore County, Maryland ordered the employer to pay the bonus and the Circuit Court affirmed. Id. The employer appealed and filed a petition for writ of certiorari to the Maryland Court of Appeals. Id. The court reversed the lower courts' orders for the employer to pay the bonus. Id. at 673. The court stated that "the wages which an employee is due, and which must be paid on termination of employment, consist of all compensation, and any other remuneration, that the employee was promised in exchange for his work." Id. at 671–72. Stated differently, "to be wages, [as] included within the statute, the payment must have been promised to the employee as compensation for work performed." Id. at 672. Thus, the court held that a bonus can be wages under the statute if it is negotiated and included as part of the wage package. Id. But the court found that the bonus check was paid in advance of the employee hitting two years with the company, and thus it was "merely a gift, a gratuity, revocable at any time before delivery." Id. at 673. The court found that the timing of the employee's departure was dispositive in making its decision, though:

> Had the respondent been with the petitioner for two years when the decision was made to offer him a bonus and had the financial condition of the petitioner justified it, there would be no doubt of the respondent's entitlement, that he would have earned the distribution in this case. That is so because sharing in the profits of the company after two years was promised as part of the respondent's compensation package.

Id.

The Court is unconvinced that either Blanch or Whiting-Turner require it to reject Anderson's claim for his year-end bonus—indeed, each case supports a finding that the year-end bonus does qualify as wages under the statute. The cases stand for the proposition that bonus payments that are made as gifts or gratuities and not as part of a wage package

do not qualify as wages under the statute. See Blanch, 124 F.Supp.3d at 636; Whiting-Turner, 783 A.2d at 673. The opposite conclusion should be reached here, where Anderson executed the 2021 Bonus Plan covering "a bi-weekly salary, quarterly and a year-end bonus potential" with EtherWAN that explicitly provides that Anderson could "earn a year-end bonus up to $120,000 for sales ranging between 3% Growth and 150% of Plan." (Bonus Plan at 2 (emphasis added)). Thus, the bonus payment appears, at least at this early stage, to be part of a negotiated agreement regarding Anderson's compensation package tied in some part to his sales performance and not a mere gratuity or gift.

Moreover, EtherWAN's argument that Anderson is ineligible for the payment because he was not employed at EtherWAN at the time of distribution fails. (Mot. at 7). As Anderson raises, Medex v. McCabe, 811 A.2d 297 (Md. 2002), is instructive. There, the Court of Appeals considered an employee's claim for unpaid incentive fees after his employment was terminated. Id. at 300. As is the case here, the employer argued that under the employment contract and incentive plan, "to be eligible for the incentive fees, the employee must still be employed at the date of payment." Id. at 302. Thus, the employer contended that the employee was not entitled to payment. Id. at 303. The court emphasized the public policy interests of the MWPCL and held that "[c]ontractual language between the parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts." Id. at 304. This is because "a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy." Id. Accordingly, "an employee's right to compensation vests when the employee does everything required to earn the wages," and

9

mere continuation of employment is an insufficient condition for payment where it conflicts with the MWPCL's policy interests. Id. at 305. Further, Maryland gives "equal protection to all departed employees," whether they left voluntarily or involuntarily. Id.; see LE § 3-505. Therefore, EtherWAN's contractual provision requiring continued employment to receive payment is invalid as it conflicts with the reasoned policy considerations of the MWPCL. To the extent Anderson performed the work needed to earn the year-end bonus, he is entitled to it.

The Court notes that EtherWAN raises a new argument in its Reply. (Def.'s Reply Mem. L. Sup. Mot. Dismiss ["Reply"] at 8–9, ECF No. 17) (arguing that Anderson's claims fail because he was never "promised" the year-end bonus payment). "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734 (D.Md. 2006). The rule exists to avoid prejudicing the opposing party as it may not have the opportunity to respond to the added argument. Id. As such, the Court will not consider it.

Accordingly, the Court will deny EtherWAN's Motion as to Count I.

### 2. Wrongful Discharge

Finally, Anderson raises a claim for wrongful discharge. (Count II). "The tort of wrongful discharge is an exception to the well-established principle that an at-will employee may be discharged by his employer for any reason, or no reason at all." Miller v. U.S. Foodservice, Inc., 405 F.Supp.2d 607, 610 (D.Md. 2005). "[T]o establish wrongful discharge, the employee must be discharged, the basis for the employee discharge must

violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." Id. (quoting Wholey v. Sears Roebuck, 803 A.2d 482, 489 (Md. 2002)). An employee asserting wrongful discharge "must specifically identify the clear mandate of Maryland public policy that was violated by his termination." Szaller v. Am. Nat'l Red Cross, 293 F.3d 148, 151 (4th Cir. 2002). "[T]here must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment or prior judicial decision, directing, prohibiting, or protecting the conduct in question" so that the matter is not one of conjecture or interpretation. Miller, 405 F.Supp.2d at 610 (quoting King v. Marriott Int'l, Inc., 866 A.2d 895, 903 (Md.Ct.Spec.App. 2005)).

EtherWAN argues that Anderson has failed to identify a public policy that he alleges EtherWAN violated or establish a nexus between his conduct and EtherWAN's decision to fire him. (Mot. at 9–10). Anderson responds that the MWPCL reflects a public policy in favor or ensuring that an employee receive wages, but that it does not provide a civil remedy for termination as a means to avoid paying wages. (Opp'n at 6). Thus, Anderson contends that he can plead a claim for wrongful discharge as there is no appropriate civil remedy under the MWPCL. (Id.). The Court agrees with EtherWAN and will dismiss the claim.

Anderson did not raise a specific public policy in his claim for wrongful discharge in his Complaint. (See Compl. at 4–5). Instead, he states only that "Maryland law recognizes a public policy against asserting material misstatements and in ensuring that employees received all wages earned in a timely manner." (Id. ¶ 27). Thus, his arguments

11

in Opposition do not track his allegations as pleaded. Moreover, he fails to "plead with particularity the source of the public policy" allegedly violated by his termination. See Terry v. Legato Sys., Inc., 241 F.Supp.2d 566, 569 (D.Md. 2003). Anderson has therefore failed to meet a threshold requirement for his claim. Accordingly, the Court will grant EtherWAN's Motion as to Count II.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant EtherWAN's Motion to Dismiss (ECF No. 10) as to Anderson's claim for wrongful discharge (Count II) but will deny it as to his claim for violation of the MWPCL (Count I). A separate Order follows. Entered this 17th day of January, 2023.

/s/
George L. Russell, III
United States District Judge